```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                    CHARLOTTE DIVISION
                     3:06CV292-02-MU
                      (3:00CR136-MU)
```

| | | |
|---|---|---|
| JOHN JERMAINE BECKHAM, | ) | |
|     Petitioner, | ) | |
| | ) | |
|        v. | ) | **O R D E R** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |

**THIS MATTER** is before the Court on the petitioner's "Motion to Vacate, Set Aside, Or Correct Sentence" under 28 U.S.C. §2255, filed July 17, 2006. For the reasons stated herein, the petitioner's Motion to Vacate will be <u>dismissed</u> as time-barred.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

According to the record underlying his criminal case, on August 7, 2000, a Superceding Bill of Indictment was filed, charging the petitioner (and five others) with conspiracy to possess with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. §§841 and 846; and with possession with intent to distribute in excess of five grams of cocaine base, in violation of 21 U.S.C. §841(a)(1). Thereafter, on August 28, 2000, the government filed a Notice pursuant to 21 U.S.C. §§841 and 851, indicating that the petitioner previously had sustained four drug convictions in North Carolina court; and that it intended to seek an enhanced punishment if it obtained a

conviction against the petitioner on either of the drug charges which he then was facing.

On December 19, 2000, the petitioner entered into a written Plea Agreement with the government, whereby he agreed to plead guilty to the conspiracy charge as set forth in the Indictment. The terms of the petitioner's Plea Agreement further stipulated that his conviction exposed him to, inter alia, a maximum term of life imprisonment; that the amount of cocaine base for which he could be held accountable was at least 150 but less than 500 grams; that the corresponding offense level for such quantity was 34; and that the petitioner had, in fact, previously been convicted of the Sale and Delivery of cocaine in the Superior Court of Mecklenburg County.

On January 5, 2001, the petitioner appeared before the Court and tendered his guilty plea to the conspiracy charge. On that occasion, the Court engaged the petitioner in a lengthy colloquy to ensure that his guilty plea was being intelligently and voluntarily tendered. In response to the Court's numerous questions, the petitioner swore, inter alia, that he had fully discussed his case with his attorney; that he understood the charges and penalties which he was facing, particularly as they were explained by the Court and by his attorney; and that he and counsel had fully discussed any defenses he might have had to the subject charges.

In addition, the petitioner advised the Court that no one had threatened, intimidated, or forced him into pleading guilty, and no one had made him any promises of leniency in order to induce his plea. On the contrary, the petitioner told the Court that he was tendering his pleas because he, in fact, was guilty of the subject offense. The petitioner also swore that he was satisfied with his attorney's services. In fact, the petitioner told the Court that counsel's "services were excellent." Thus, after hearing the petitioner's answers to each of its questions, the Court accepted his guilty plea.

Following that Hearing, the petitioner was able to convince the Court to release him on bond pending the resolution of his case. However, that bond subsequently was revoked and he was returned to jail after he violated the conditions of his release. In particular, the petitioner tested positive for drug use on four occasions; he sustained new State court charges for assault and battery and misdemeanor breaking and entering; he admitted to having sold marijuana while on release; and he fled to the State of Florida, thereby absconding this Court's supervision.

Next, on March 19, 2003, the Court finally was able to hold the petitioner's Factual Basis & Sentencing Hearing. During that Hearing, the petitioner apologized for his behavior and conceded that although he had begun to cooperate with authorities, everything went "downhill" once he began drinking. At the conclusion

of that Hearing, the Court sentenced the petitioner to a term of 300 months imprisonment. The Court's Judgment was entered on April 4, 2003.

The record further shows that the petitioner did not immediately give a notice of appeal. Rather, after delaying nearly three years, on January 17, 2006, the petitioner filed a document captioned as a "Notice of Appeal Nunc Pro Tunc" in his criminal case. According to the Affidavit which the petitioner submitted along with his Notice, he essentially asserts that he had been "lead to believe" that an appeal had been filed; and that it was not until he failed to receive correspondence from his attorney that he inquired into the matter and discovered that no appeal had been filed. On January 20, 2006, the petitioner's Notice was transmitted to the Fourth Circuit Court of Appeals.

Thereafter, on February 6, 2006, the appellate Court directed both parties to file documents addressing the issue of the timeliness of the petitioner's appeal in light of Rule 4(b) of the Federal Rules of Appellate Procedure. To that end, on February 22, 2006, the government filed a motion to dismiss the petitioner's appeal, arguing that it was untimely filed. On April 28, 2006, the Court of Appeals granted the government's Motion to Dismiss on the ground that the petitioner's appeal was not timely filed.

Undaunted by that conclusion, the petitioner now has return-

ed to this Court with the instant Motion to Vacate. Apart from his claims, the petitioner obviously has recognized that his Motion to Vacate likely would be construed as time-barred; thus, he set out in his Motion to establish that his claims somehow were timely presented as required by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA" hereafter). Specifically, the petitioner asserts that his Motion should be construed as timely filed "because he actually is innocent of the offense based on the issue[s] outlined in this Complaint [sic] and memorandum" and the two exhibits which he submitted.

However, it is clear on this record that the petitioner's explanations concerning the timeliness of his Motion are far from compelling. That is, the Court finds that despite his having been given an opportunity to do so,[1] the petitioner has failed to articulate a proper basis for extending the applicable limitations period. Likewise, the petitioner has failed to articulate

---

[1] In January 2002, the Fourth Circuit Court of Appeals decided the case of Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002). There, the Court concluded that "when a federal habeas court, prior to trial, perceives a pro-se [petition or motion to vacate] to be untimely and the state has not filed a motion to dismiss based upon the one-year limitations period, the [district] court must warn the petitioner that the case is subject to dismissal . . . absent a sufficient explanation." Consistent with that requirement, in December 2004, the Administrative Office of the Courts modified the federal motion to vacate forms to comply with Hill. The new forms now include a section which directs the petitioner to address the "timeliness of [his/her] motion." In particular, question 18 on the new form advises the petitioner that if his/her conviction became final more than one year before the time that the motion to vacate is being submitted, he/she "must explain why the one-year statute of limitations as contained in 28 U.S.C. §2255 [also set forth on the form] does not bar [such] motion." Accordingly, given the fact that the petitioner has attempted to address the timeliness of his Motion to Vacate--albeit unsuccessfully--the Court concludes that he has been given every opportunity to which he is entitled in this regard, and no further warning is required for him.

a reason why his April 2004 filing deadline should be equitably tolled. Therefore, the petitioner's Motion to Vacate must be <u>dismissed</u> as time-barred.

## II. **ANALYSIS**

As was noted on the petitioner's Motion to Vacate form, in 1996 Congress enacted the "AEDPA". Among other things, the AEDPA amended 28 U.S.C. §2255 by imposing a 1-year statute of limitations period for the filing of a motion to vacate. The amendment provides:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–

    (1) the date on which the judgment of conviction becomes final;

    (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

    (3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Here, the record indicates that the petitioner's conviction and Judgment became final on or about April 14, 2003--that is, at the expiration of the 10-day period during which the petitioner could have filed a notice of appeal. Thus, the petitioner had up

to and including April 14, 2004, in which to file the instant Motion to Vacate.  Obviously, the petitioner did not file this Motion by that deadline.

Further, as has already been pointed out, the petitioner's assertions as to why this Motion should be construed as timely filed simply are unavailing.  Indeed, his claim of actual innocence as purportedly reflected in his Plea Agreement is disingenuous.  Likewise, the petitioner's reliance upon the fact that in December 2005, he wrote a letter to the Clerk of this Court, inquiring about whether or not an appeal had been filed also is not helpful.  To be sure, the petitioner has not even attempted to argue (or to explain) why he could not have made such an inquiry before the expiration of his one-year filing deadline.

Equally critically, the Court for its own part has concluded that the petitioner cannot rely upon his untimely filed appeal to somehow restart his one-year limitations period.  First, the petitioner's one-year limitations period already had expired at the time that he filed his belated Notice of Appeal.  Second, such appeal ultimately was dismissed as untimely filed.  Therefore, the petitioner cannot be allowed to circumvent Congress' intent to impose such a deadline by using this untimely filed appeal to restart his limitations clock.  To put it simply, the petitioner will not be permitted to manipulate his circumstances

in order to use his untimely filed appeal to somehow breathe new life into a limitations period which had expired long before he attempted the appeal.

Finally, the petitioner has failed to show the existence of any "rare instances" which would make it unconscionable for this Court to enforce the limitations period against him.  Consequently, the time during which the petitioner delayed bringing this Motion cannot be equitably tolled.  See  Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2004) (en banc) (discussing the requirements for equitable tolling), cert. denied, 125 S.Ct. 209 (2004); and United States v. Sosa, 364 F.3d 507, 511-13 (4th Cir. 2004) (same).

### III.   CONCLUSION

The AEDPA requires, among other things, that petitioners seeking to bring Motions to Vacate under 28 U.S.C. §2255 do so within the time limitations prescribed by that statute.   Here, the petitioner has failed to meet that requirement, and he has failed to establish any other basis for construing his Motion as timely filed.  Accordingly, the petitioner's Motion to Vacate shall be dismissed.

### IV.   ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the instant Motion to Vacate is **DISMISSED** as untimely filed.

**SO ORDERED.**

Signed: July 23, 2006

Graham C. Mullen
United States District Judge